## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **TEXAS AGGIE CONSERVATIVES**, a recognized student organization at Texas A&M University,<br><br>    Plaintiff,<br><br>  v.<br><br>**R. BOWEN LOFTIN**, individually and in his official capacity as President of Texas A&M University; Lt. Gen. **JOSEPH WEBER**, individually and in his official capacity as Vice President of Student Affairs at Texas A&M University; **WILLIAM B. STACKMAN**, individually and in his official capacity as Director of Student Activities at Texas A&M University; **ROSEMARY SCHOENFELD, JOHN T. SWEENEY, CYNTHIA A. OLVERA, LAURA A. SIGLE, SOMBRA DAVIS, KATHRYN G. KING, TONYA DRIVER, MELISSA R. SHEHANE, LINDA D. LEWIS**, and **TRACIE A. LOWE**, all individually and in their official capacities as Texas A&M University employee members of the Student Organization Advisory Board; **SAMANTHA L. ALVIS, CHAO HUANG, ROBERT C. SCOGGINS, STEPHEN N. BARNES, HOA T. NGUYEN, KELSEY HANES**, and **EMILY E. SCHARNBERG**, all in their official capacities as Texas A&M University student members of the Student Organization Advisory Board,<br><br>    Defendants. | Case No. 4:12-cv-1833<br><br>**VERIFIED COMPLAINT** |

Plaintiff Texas Aggie Conservatives, by and through counsel, and for its Complaint against the Defendants, hereby states as follows:

## INTRODUCTION

1.      The cornerstone of higher education is the ability of students to participate in the "marketplace of ideas" on campus.  In the context of providing funding to student organizations for their expressive activities, the First Amendment dictates that this marketplace cannot prefer some viewpoints to others.   In direct violation of these principles, Texas A&M University ("TAMU") excludes religious and political student organizations from receiving Student Organization Funding for their expressive activities while it provides the same funding to a broad variety of other student organizations.   TAMU requires religious and political student organizations to abandon their right to free speech as a condition of access to TAMU's benefits and does not impose this same requirement on non-religious and non-political student organizations.  Furthermore, even if religious and political student organization could access the Student Organization Funding, the TAMU committee charged with allocating the funds acts with unbridled discretion, allowing it to favor the speech of popular groups and exclude unpopular ones.

2.      When Plaintiff Texas Aggie Conservatives ("TAC") applied for Student Organization Funding to host a nationally recognized speaker, Star Parker, to talk about poverty, race, and social justice issues, TAMU officials denied the request because TAC is classified as a social and political student organization and the event involved social, political, and religious content and viewpoints.  At the same time, for example, TAMU officials have allocated the same funds to the NAACP, even though it bears the same classification as TAC; the Muslim Student Association for a religious event; and the TAMU V-day for a self-described feminist speaker on women's empowerment.

3.      By treating TAC differently than other student organizations simply because of the content and viewpoint of its message; by denying TAC eligibility to receive Student Organization Funding for its activities, including the Star Parker event; and by allocating the student organization funds without any criteria or standards, Defendants violated TAC's constitutional rights and caused irreparable injury to Plaintiff.

4.      This action is premised on the United States Constitution concerning the denial of Plaintiff's fundamental rights to free speech, equal protection, and due process.  The aforementioned policies and actions are challenged on their face and as applied to Plaintiff. Defendants' policies and actions have deprived and will continue to deprive Plaintiff of its paramount rights and guarantees under the United States Constitution.  Each and every act of Defendants alleged herein was committed by Defendants, each and every one of them, under the color of state law and authority.

<u>**JURISDICTION AND VENUE**</u>

5.      This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

6.      This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys fees under 42 U.S.C. § 1988.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because most of the Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

**PLAINTIFF**

9.     Plaintiff Texas Aggie Conservatives is an unincorporated expressive student organization made up of TAMU students.  It has been a recognized student organization at TAMU since 2008.

10.     Part of TAC's mission is to be an expressive student organization at TAMU and protect its members' constitutional right to equal access to student organization funding.

11.     If TAC succeeds in this lawsuit, it will be able to obtain viewpoint neutral access to student organization funding.

12.     TAC brings this suit on behalf of itself as a registered student organization at TAMU and on behalf of its individual student members, all of whom are denied access to TAMU's organizational funding mechanism because of the content and viewpoint of their speech activities.

**DEFENDANTS**

13.     Defendant R. Bowen Loftin is President and Chief Executive Officer of TAMU.  Mr. Loftin possesses the authority to change and enforce the student organization funding policies and procedures challenged herein, including the policy that denies funding to religious and political student organizations.  Mr. Loftin is responsible for making final decisions on all student organization funding decisions, including the denial of funding to TAC for the Star Parker event.  Mr. Loftin is ultimately responsible for administration and policymaking for the

university, including the student organization funding policies and procedures challenged herein. He is sued both in his individual and official capacities.

14.     Defendant Lt. Gen. Joseph Weber is Vice President of Student Affairs at TAMU. Mr. Weber leads the TAMU department that enacted the student organization funding policies and procedures challenged herein, including the policy that denies funding to religious and political student organizations.   Mr. Weber is responsible for making final decisions on all student organization funding decisions, including the denial of funding to TAC for the Star Parker event.  He is responsible for administration and policymaking for student organization funding, including the policies and procedures challenged herein.  He is sued both in his individual and official capacities.

15.     Defendant William B. Stackman is the Director of the Department of Student Activities, a Division of Student Affairs, and Chair of the Student Organization Advisory Board at TAMU.  Mr. Stackman is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, he considers whether the viewpoints expressed will be political or religious in nature.  Mr. Stackman and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Mr. Stackman is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

16.     Defendant Rosemary Schoenfeld is Assistant to the Associate Director for State Programs and a representative on the Student Organization Advisory Board at TAMU.  Ms. Schoenfeld is responsible for determining whether student organizations are eligible to receive

student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature. Ms. Schoenfeld and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event. Ms. Schoenfeld is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein. She is sued both in her individual and official capacities.

17.     Defendant John T. Sweeney is Associate Director of the Department of Student Activities and Student Organization Development and Administration and a representative on the Student Organization Advisory Board at TAMU. Mr. Sweeney is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process he considers whether the viewpoints expressed will be political or religious in nature. Mr. Sweeney and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event. Mr. Sweeney is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein. He is sued both in his individual and official capacities.

18.     Defendant Cynthia A. Olvera is a Student Development Specialist III in the Department of Student Activities and a representative on the Student Organization Advisory Board at TAMU. Ms. Olvera is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature. Ms. Olvera and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC

Student Organization Funding for its Star Parker event.  Ms. Olvera is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

19.    Defendant Laura A. Sigle is Associate Director of Financial Services in the Department of Student Activities and a representative on the Student Organization Advisory Board at TAMU.  Ms. Sigle is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature.  Ms. Sigle and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. Sigle is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

20.    Defendant Sombra Davis is an employee in the International Coordination Office and a representative on the Student Organization Advisory Board at TAMU.  Ms. Davis is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature.  Ms. Davis and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. Davis is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the

policies and procedures contained herein.  She is sued both in her individual and official capacities.

21.     Defendant Kathryn G. King is Program Coordinator for the Memorial Student Center Student Programs Office and a representative on the Student Organization Advisory Board at TAMU.  Ms. King is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature.  Ms. King and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. King is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

22.     Defendant Tonya Driver is Associate Director of the Department of Multicultural Services and a representative on the Student Organization Advisory Board at TAMU.  Ms. Driver is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature.  Ms. Driver and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. Driver is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

23.    Defendant Melissa R. Shehane is Student Development Specialist III in the Department of Student Activities and a representative on the Student Organization Advisory Board at TAMU.  Ms. Shehane is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature.  Ms. Shehane and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. Shehane is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

24.    Defendant Linda D. Lewis is Administrative Coordinator in the Department of Student Activities and a representative on the Student Organization Advisory Board at TAMU. Ms. Lewis is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature.  Ms. Lewis and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. Lewis is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

25.    Defendant Tracie A. Lowe is Assistant Coordinator in the Offices of the Dean of Student Life, a Division of Student Affairs, and a representative on the Student Organization Advisory Board at TAMU.    Ms. Lowe is responsible for determining whether student

organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature. Ms. Lowe and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event. Ms. Lowe is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein. She is sued both in her individual and official capacities.

26.    Defendant Samantha L. Alvis is a student and a representative on the Student Organization Advisory Board at TAMU. Ms. Alvis is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature. Ms. Alvis and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event. Ms. Alvis is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein. She is sued in her official capacity.[1]

27.    Defendant Chao Huang is a student and a representative on the Student Organization Advisory Board at TAMU. Ms. Huang is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature. Ms. Huang and the members of the Student Organization Advisory Board applied the policies

---

[1] In Paragraphs 26-32, Plaintiff intentionally did not sue any of the student members of the Student Organization Advisory Board in their individual capacities because they are not final policymakers at Texas A&M University. Plaintiff reserves the right, however, to amend its complaint and add these students as defendants in their individual capacities, if the facts indicate it is necessary.

challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. Huang is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued in her official capacity.

28.    Defendant Robert C. Scoggins is a student and a representative on the Student Organization Advisory Board at TAMU.  Mr. Scoggins is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, he considers whether the viewpoints expressed will be political or religious in nature. Mr. Scoggins and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Mr. Scoggins is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  He is sued in his official capacity.

29.    Defendant Stephen N. Barnes is a student and a representative on the Student Organization Advisory Board at TAMU.  Mr. Barnes is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, he considers whether the viewpoints expressed will be political or religious in nature. Mr. Barnes and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Mr. Barnes is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  He is sued in his official capacity.

30.     Defendant Hoa T. Nguyen is a student and a representative on the Student Organization Advisory Board at TAMU.  Ms. Nguyen is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature. Ms. Nguyen and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. Nguyen is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued in her official capacity.

31.     Defendant Kelsey Hanes is a student and a representative on the Student Organization Advisory Board at TAMU.  Ms. Hanes is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature. Ms. Hanes and the members of the Student Organization Advisory Board applied the policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.  Ms. Hanes is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued in her official capacity.

32.     Defendant Emily E. Scharnberg is a student and a representative on the Student Organization Advisory Board at TAMU.  Ms. Scharnberg is responsible for determining whether student organizations are eligible to receive student organization funding, and during that process, she considers whether the viewpoints expressed will be political or religious in nature. Ms. Scharnberg and the members of the Student Organization Advisory Board applied the

policies challenged herein and denied TAC Student Organization Funding for its Star Parker event.   Ms. Scharnberg is responsible with other officials on the Board for allocation, administration, and policymaking for student organization funding, including the policies and procedures contained herein.  She is sued in her official capacity.

## **FACTUAL BACKGROUND**

### A.  **Overview of the Student Organization Funding System at Texas A&M University.**

33.    The Texas A&M University System is a public university organized and existing under the laws of the State of Texas, and receives funding from the State of Texas in order to operate.

34.    As set forth in greater detail below, TAMU operates a forum of recognized student organizations.

35.    Student organizations that meet the requirements for recognition "enjoy the privileges associated with the status of being officially recognized by the university."  These privileges include "eligibility to apply for special funding for student organization events."

36.    As set forth in greater detail below, "the TAMU Student Organization Advisory Board in conjunction with the Department of Student Activities and The Association of Former Students has established a limited supplemental funding pool for assisting Recognized Student Organizations and their activities."

37.    According to the Student Organization Advisory Board policy, registered student organizations in the following categories are ineligible for funding:  Religious, Social and Political Issues, Sports Clubs, MSC Organizations, and Health Science Center.

### B.  <u>Background on TAC at the University</u>.

38.    TAC was founded in 2008 as a nonprofit, student-led expressive student group at TAMU.  TAC gained recognized student organization status that same year.

39.    TAC promotes conservative ideologies and advances the conservative movement at the university, local, state, and national levels through a number of means including educating students and the public, advocating conservative fiscal and social policies, campus activism, offering camaraderie for conservative students, and campaigning for conservative political candidates.

40.    TAC expresses its conservative message on TAMU's campus through a variety of means including flyers, peaceful demonstrations, holding signs, hosting tables with information, inviting speakers to campus, and talking with fellow students about conservative ideas, just to name a few.

41.    When engaging in these expressive activities, TAC discusses political, religious, social, cultural, and moral issues, events, and ideas.

42.    TAC has extensive experience hosting successful speaker events on campus.

43.    On September 11, 2008, TAC hosted Harvey Kushner and Scott Horton to debate "International Terrorism:  America's Fight."

44.    On October 1, 2008, TAC hosted Mark Krikorian to discuss immigration policy.

45.    On October 28, 2008, TAC hosted Reverend Jesse Lee Peterson at TAMU to discuss "Why Barack Obama and Liberal Policies Are Bad for America."

46.    On February 2, 2009, TAC hosted the Honorable Louie Gohmert to discuss "Post-Reagan Bailout Mania."

47.     On March 3, 2009, TAC hosted Rabbi Daniel Lapin to discuss the morality of capitalism.

48.     On April 28, 2009, TAC hosted Lord Christopher Monckton to discuss "Climate Change:  Separating Fact from Fiction."

49.     On September 7, 2009, TAC hosted Michael Graham to discuss the dangers of leftist public policy.

50.     On September 21, 2009, TAC hosted Robert Bryce to discuss energy policy.

51.     On October 19, 2009, TAC hosted Lord Christopher Monckton to discuss "The Cost of Global Warming Hysteria."

52.     On September 27, 2010, TAC hosted Craig James for the event "Get off the Sidelines and Into the Game," discussing the importance of the free market.

53.     On November 11, 2010, TAC hosted Robert Spencer to discuss "Is Islam a Religion of Peace?"

54.     On October 18, 2011, TAC co-hosted Alex Epstein to discuss "The Green Blackout:  A Community Dialogue."

55.     TAC did not receive Student Organization Funding for these events, but paid for them with other sources of funding and donations.

56.     TAC intends to engage in these types of expressive activities during the 2012-2013 academic year and subsequent years thereafter.

57.     During the 2012-2013 academic year, TAC intends to hold its fifth annual 9/11 Memorial on the TAMU campus.  TAC will place 2,977 American flags in pre-reserved areas of campus.

58.     TAC intends to apply for Student Organization Funding for this event.  It will seek approximately $700.00 in Student Organization Funding to cover the costs of purchasing the flags, flyers, and associated supplies.

59.     During the 2012-2013 academic year, TAC also intends to hold a National Day of Prayer event in May 2013 and bring a speaker to campus to discuss issues involving faith and politics.

### C.  TAC's Funding Request for the Star Parker Event.

60.     On December 21, 2011, Marc Pitts, TAC's Chairman, submitted a Student Organization Funding Request on behalf of TAC to the Student Organization Advisory Board. A copy of TAC's Student Organization Funding Request is attached as Exhibit 1 to this Complaint.

61.     TAC requested funding to bring Star Parker to campus on February 27, 2012, to lecture on contemporary social problems in the United States and solutions for winning the war on poverty, including a discussion on issues involving poverty, race, and social justice.

62.     TAC estimated the event would cost $6,800.

63.     TAC requested $2,500 from the Student Organization Advisory Board to help off-set the costs of the event.

64.     TAC described the event as follows:

The Texas Aggie Conservatives plan to host Star Parker on campus in February 2012 to speak on the topics of poverty, race, and social justice.  Many Texas A&M student [sic] can't relate to these issues, so It [sic] is important for students to have an opportunity to be exposed to ideas about how to achieve true social justice.  Having lived in total poverty for many years, Parker has a unique perspective on social justice and spreads the message that freedom, faith, and personal responsibility are of utmost importance for addressing the issues of race and poverty in the United States.

The event will bring intellectual diversity to campus and will promote solutions for improving the lives of the impoverished in America.  Through limited-

16

government free-market solutions rather than expanded welfare programs, we can empower those in poverty to break free of government dependency in order to achieve greater equality. The event will discuss contemporary social problems in the United States and solutions for winning the war on poverty.

This event would be free and open to the public, all students, faculty, staff, and administrators; the primary audience would be Texas A&M students. There will be a 40 minute speech and a 25 minute question and answer period. The event will be held in Rudder Theatre. Based on past events, an attendance of 250–350 guests is a reasonable estimate for this event.

*See* Ex. 1.

65.      On February 13, 2012, Marc Pitts received an email from Defendant Tim Sweeney, denying TAC's request for funding from the Student Organization Advisory Board. A copy of Defendant Sweeney's February 13, 2012 email to Marc Pitts is attached as Exhibit 2 to this Complaint.

66.      In the February 13 email, Defendant Sweeney wrote:

The committee met today and because your organization is categorized under "Social Issues and Political organizations" the guidelines clearly state that your group would not be eligible for that funding. However, the SACT department allocation of $500 still stands. Have you made contact with our accounting people to process those funds yet?

*See* Ex. 2.

67.      Various TAMU departments offer funding to student organizations on a one-time basis. TAC applied for funding from a variety of departments, and the Department of Student Activities gave it $500.00 for the Star Parker event.

68.      On February 27, 2012, Marc Pitts received an email from Defendant Linda Lewis, which was signed by Defendant Sweeney, denying TAC's request for funding from the Student Organization Advisory Board. A copy of the February 27, 2012 email from Defendants Lewis and Sweeney is attached as Exhibit 3 to this Complaint.

69.    In the February 27 email, Defendants Lewis and Sweeney wrote:

Thank you for your recent application for funding.  As you may be aware not all recognized student organizations are eligible for this funding.  Unfortunately, we have been informed that the Texas Aggie Conservatives are not eligible for these funds.  The Association of Former Students provides the restricted funding for the Student Organization process and their guidelines assert that the funds cannot be approved for recognized organizations with a classification of social and political issues.

*See* Ex. 3.

70.    The members of the Student Organization Advisory Board, including all of the named defendants herein, denied TAC's request for funding based on the challenged policies because the group is classified by TAMU as a social and political student organization.

71.    The members of the Student Organization Advisory Board, including all of the named defendants herein, denied TAC's request for funding thereby discriminating against the social and political content and viewpoint intended to be expressed by TAC and its invited speaker.

72.    On information and belief, the members of the Student Organization Advisory Board, including all of the named defendants herein, denied TAC's request for funding thereby discriminating against the religious content and viewpoint intended to be expressed by TAC and its invited speaker.

73.    On February 27, 2012, TAC successfully hosted Star Parker as the keynote speaker for TAC's First Annual Social Justice Program to discuss "Uncle Sam's Plantation: How Big Government Enslaves America's Poor and What We Can Do About It."

74.    TAC had to raise the $2,500 it otherwise could have received from the Student Organization Advisory Board, but for the content and viewpoint of the group's message.

**D.  TAMU's Student Organization Funding Policies**.

75.    TAMU operates a forum of recognized student organizations.

76.    As TAMU's Student Rule 41 explains, "Student organizations may be officially recognized when formed for purposes that are consistent with the philosophy and goals that have been developed for the creation and existence of Texas A&M University."  A copy of Student Rule 41 is attached as Exhibit 4 to this Complaint.

77.    To become a recognized student organization, a group must comply with five requirements, outlined in Student Rule 41.

78.    TAC obtained recognized student organization status in 2008 and maintained this status in every academic year since.

79.    According to Student Rule 41, recognized student organizations "shall enjoy the privileges associated with the status of being officially recognized by the university including use of university name, university facilities for meetings, university logo and trademarks, and university property for concessions."  Ex. 4 at § 41.1.

80.    TAMU's *Student Organization Manual* also sets forth the benefits of becoming a recognized student organization:

> There are a number of benefits that come from being a recognized student organization at Texas A&M.  These benefits are not afforded to non-recognized organizations or individual students.  Some of the privileges of recognized student organizations include:
> - Association with Texas A&M University, including the ability to incorporate the name of the university into the name of the organization and the ability to use university logos and trademarks for organizational needs or products (please see the Office of Collegiate Licensing for more information).
> - A free web site with 20 MB of memory and a free e-mail address for the organization, as well as the support of IT specialists who work within the Division of Student Affairs.
> - Access to permits for sandwich boards on campus.
> - Access to concessions permits to reserve space for the sale or distribution of items.
> - Access to free banking services at the Student Organization Finance Center (SOFC).

- Eligibility to apply for office, cubicle, or storage space for the organization.
- Use of university facilities and priority use of campus space.
- **Eligibility to apply for special funding for student organization events and risk initiatives.**
- Resources and support from staff members in the Department of Student Activities.

(Emphasis added.)  A copy of the "Recognition of Student Organizations" section of the TAMU

*Student Organization Manual* is attached as Exhibit 5 to this Complaint.

81.    According to the Student Organization Manual, once TAMU recognizes a student

organization, it classifies the organization "based on its mission and purpose" into one of the

following categories:

- Academic
- Arts and Culture
- Campus Service
- Community/Volunteer Service
- Cultural/International
- Enthusiasts
- Global Service
- Greek Life
- Healthy Living
- Honor
- Military
- Professional/Career
- Recreation
- Religious
- Residence Halls
- Social and Political Issues
- Special Interests
- Spirit and Tradition
- Sport Clubs
- Student Government

*See* Ex. 5 at 1-2.

82.    According to the *Student Organization Manual*, TAMU's "Department of Student

Activities offers two types of funding opportunities for student organizations."  A copy of the

"Finances" section of the TAMU *Student Organization Manual* is attached as Exhibit 6 to this Complaint.

83.     One of these categories – Risk Initiative Funding – "help[s] support the costs of [student organization] events or initiatives specifically related to risk management."  Ex. 6.  This type of funding "is available for all Recognized Student Organizations at Texas A&M University," and thus, TAC does not challenge its constitutionality in this lawsuit.  *Id.*

84.     The second type of funding is Student Organization Funding.

85.     TAMU's Student Organization Funding policy creates a speech forum for recognized student organizations.

86.     As the *Student Organization Manual* explains, "All organizations **except religious, MSC, political/social issues, and sports organizations** can apply for Student Organization Funding for their special events or annual operations."  Ex. 6 (emphasis added).

87.     The funds dispensed through the Student Organization Funding system come from "a donation from The Association of Former Students."  Ex. 6.

88.     The Student Organization Funding system was established by "the Student Organization Advisory Board in conjunction with the Department of Student Activities and The Association of Former Students . . . for assisting Recognized Student Organizations and their activities."  A copy of the Student Organization Funding policy is attached as Exhibit 7 to this Complaint.

89.     According to TAMU's funding policies, only certain recognized student organizations may request Student Organization Funding:

Recognized Student Organizations may request Student Organization Funding if:
- Your organization is in good standing with the University and not 30 days past due on any financial obligation to the University.
- Your organization is NOT in one of the following categories:

21

- o  Religious
- o  Social and Political Issues
- o  Sports Clubs
- o  MSC Organizations
- o  Health Science Center

*See* Ex. 7.

90.    Eligible recognized student organizations may request these funds for two purposes – Special Event Funding or Annual Operations Funding – at any time during the year. But "applications should be submitted 14 days in advance of [an] event to receive full consideration." Ex. 7.

91.    To request Student Organization Funding, an eligible recognized student organization must complete a Student Organization Funding Request and submit it to the Department of Student Activities. A copy of the Student Organization Funding Request is attached as Exhibit 8 to this Complaint.

92.    The Student Organization Funding Request form repeats the eligibility requirements for Student Organization Funding at TAMU:

Recognized Student Organizations may request Student Organization Funding if:
- Your organization is in good standing with the University and not 30 days past due on any financial obligation to the University.
- Your organization is categorized as:

| | |
|---|---|
| Academic | Hometown |
| Campus Service | Honor |
| Community Service | Military |
| Cultural/International | Performing and Visual Arts |
| Fraternities/Sororities | Special Interests |
| Student Government | Spirit and Tradition |
| Health and Recreation | |

**Please Note: religious, MSC, Political and Social Issues, Sports, and Health Science Center organizations are INELIGIBLE for this type of funding.**

Ex. 8 at 1 (emphasis added).

93.    A student organization must use any funds received "for the purpose for which they were allocated" and cannot use them "to pay for food, clothing, gifts, awards, honorariums, etc." Ex. 8 at 1.

94.    Once an eligible recognized student organization applies for student organization funding, a sub-committee of the Student Organizations Advisory Board, consisting of staff and students reviews the application.

95.    This sub-committee, sometimes called the Funding Committee, reviews these applications on a bi-weekly basis and may request a meeting with representatives of the student organization to discuss its application.

96.    The sub-committee of the Student Organizations Advisory Board determines whether to grant, adjust, or deny each student organization's request for Student Organization Funding.

97.    TAMU's funding policies assure student organizations: "You will receive a letter stating your final allocation within one month after the submission of your request." Ex. 7.

98.    Neither the TAMU *Student Organization Manual*, nor TAMU's funding policies, nor the Student Organization Funding Request form sets forth any criteria, factors, or standards for the sub-committee of the Student Organizations Advisory Board or the Board at-large to apply when deciding whether to grant, adjust, or deny a student organization's request for Student Organization Funding.

99.    On information and belief, TAMU does not possess any official policies that set forth criteria, factors, or standards the Student Organizations Advisory Board must apply when deciding whether to grant, adjust, or deny a student organization's request for Student Organization Funding.

100.    Neither the TAMU *Student Organization Manual*, nor TAMU's funding policies, nor the Student Organization Funding Request form set forth any appeal process that student organizations may utilize if they are denied student organization funding.

101.    On information and belief, TAMU does not offer any appeal process for student organizations denied student organization funding.

102.    Neither the TAMU *Student Organization Manual*, nor TAMU's funding policies, nor the Student Organization Funding Request form indicate that the Student Organization Advisory Board holds public meetings, provides advance notice of its meetings, or records it meetings.

103.    On information and belief, the Student Organization Advisory Board does not hold public meetings, provide advance notice of its meetings, or record it meetings.

104.    Neither the TAMU *Student Organization Manual*, nor TAMU's funding policies, nor the Student Organization Funding Request form indicate that the Student Organization Advisory Board provides for the removal of members who violate the constitutional norm of viewpoint neutrality when making a funding decision.

105.    On information and belief, the Student Organization Advisory Board does not remove members who violate the constitutional norm of viewpoint neutrality when making a funding decision.

106.    The Student Organization Advisory Board has provided Student Organization Funding to other TAMU recognized student organizations for activities and events that involved political and social issues.

107.    NAACP is a recognized student organization at TAMU that is categorized currently, and at the time funding was received, as a "Social and Political" organization.  It received $500 in Student Organization Funding in 2010 for a Halloween program.

108.    On information and belief, the NAACP describes itself as an educational platform that encompasses academic achievement, political consciousness, community service, family, and professional development.  Its goal is to educate, motivate, and bring awareness to the collegiate scholar.

109.    The Columbian Student Association is a recognized student organization at TAMU and received Student Organization Funding in the amount of $500 to attend a conference in Washington, D.C., a conference that discussed political issues.

110.    According to the Columbian Student Association's funding request, the conference described itself as an open forum where journalists, environmental activists, and business leaders share their insights about the real economic and political panorama in Columbia today.  The conference also provided students with debate of these issues.

111.    Eta Sigma Gamma Health Education Honor Society is a recognized student organization at TAMU and received Student Organization Funding in the amount of $500 to send members to the 13th Annual Health Education Advocacy Summit in Washington, D.C., a conference that discussed political issues.

112.    According to Eta Sigma Gamma's funding request, the Advocacy Summit included advocacy training, briefings on specific legislative issues, and meetings with members of Congress and other federal officials.

113.    The Muslim Student Association is a recognized student organization at TAMU that is classified as a "Religious" organization and received Student Organization Funding in the amount of $500 to present Islam to Muslims and non-Muslims.

114.    Brothers Under Christ is a recognized student organization at TAMU that is categorized currently, and at the time funding was received, as a "Religious" organization.  It was denied Student Organization Funding because of its classification.

115.    TAMU V-Day is a recognized student organization at TAMU and received Student Organization Funding in the amount of $800 for a public event featuring Jessica Valenti, described as a "feminist activist" on the funding request form, to speak on a political and social topic.

116.    On information and belief, the purpose of TAMU V-Day is to provide programming, education, and to raise money and awareness to stop all violence against women and girls which includes but is not limited to:  women's issues, domestic and sexual violence.

117.    On information and belief, TAMU V-Day sponsors a showing of the "Vagina Monologues" at TAMU.

118.    Voices of Praise Gospel Choir is a recognized student organization at TAMU that is religious in nature and received Student Organization Funding for its 2010 "Gospel Fest."

119.    On information and belief, the goal of the Voices of Praise Gospel Choir is that students may grow in the body of Christ individually and collectively and commit themselves to a life of service and leadership in the kingdom of God; while spreading the word of God through song on the Texas A&M University campus and the community.

120.    The Black Student Alliance Council is a recognized student organization at TAMU and received Student Organization Funding in the amount of $750 to pay for Rudder

Theater rental and security for a Black History Month event featuring the Dallas Black Dance Theater.  TAC's funding request for the Star Parker event included Rudder Theater rental and security costs.

121.    On information and belief, the Black Student Alliance Council has received Student Organization Funding for other events that discussed social, political, and religious issues.

122.    On information and belief, the Student Organization Funding Board has provided Student Organization Funding to other recognized student organizations that conducted events with social, political, or religious content and viewpoints.

123.    On information and belief, other recognized student organizations that are not classified as "religious" or "social and political" have received Student Organization Funding for events and activities that discussed religious, social, or political issues.

### FIRST CAUSE OF ACTION

### <u>Violation of Plaintiff's First Amendment Right to Freedom of Speech<br>(42 U.S.C. § 1983)</u>

124.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-123 of this Complaint.

125.    The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits viewpoint discrimination in a public university's allocation of student organization funding.

126.    When a public university allows registered student organizations to apply for activity fee funding it creates a public forum for student speech and expression.

127.    The government is not speaking when it allows registered student organizations to apply for funding.  Instead, it creates a public forum for student speech and expression.

128.    The government's ability to restrict speech in a public forum is limited.

129.    The use of student organization funding by student organizations is a form of protected speech.

130.    A public university may not condition student organization access to funding support on content-based or viewpoint-based standards.

131.    A restriction on funding religious, social, or political student organizations in a student organization funding forum is content and viewpoint discriminatory.

132.    A restriction on funding religious, social, or political expressive activities in a student organization funding forum is content and viewpoint discriminatory.

133.    Defendants' restrictions on speech in the Student Organization Funding forum are not content- or viewpoint-neutral.

134.    Defendants' prohibition on funding social, political, or religious speech in the Student Organization Funding forum fails to satisfy strict scrutiny because it is not narrowly tailored to promote a compelling government interest.

135.    Defendants' prohibition on funding social, political, or religious speech in the Student Organization Funding forum unconstitutionally restricts speech based on viewpoint and is not reasonable.

136.    The lack of objective criteria, factors, or standards for determining who may access a student organization funding forum gives government officials unbridled discretion to exclude or prohibit speech based on its content or viewpoint in violation of the First Amendment.

137.    The lack of a process to remove officials who violate viewpoint neutrality when deciding student organization funding requests indicates that the government has unbridled discretion to govern the speech forum.

138.   The lack of advanced notice for meetings, public meetings, and recording meetings of government officials charged with allocating student organization funding indicates that the government has unbridled discretion to govern the speech forum.

139.   The lack of an appeal process in a student organization funding forum indicates that the government has unbridled discretion to govern the speech forum.

140.   Defendants' Student Organization Funding policy, procedures, practices, and customs give unbridled discretion to Defendants to suppress and/or discriminate against disfavored speech content or viewpoints.

141.   Defendants' Student Organization Funding policy, procedures, practices, and customs do not provide a process through which the Student Organization Advisory Board or other government official may remove a Student Organization Advisory Board member for violating the constitutional prohibition against viewpoint discrimination.

142.   Defendants' Student Organization Funding policy, procedures, practices, and customs do not provide that Student Organization Advisory Board meetings be announced in advance to the public, be open to the public, or be recorded.

143.   Defendants' Student Organization Funding policies, procedures, practices, and customs do not provide student organizations with the ability to appeal student organization funding decisions by the Student Organization Advisory Board.

144.   Defendants engaged in content- and viewpoint-based discrimination by funding similar expressive activities of other student organizations at TAMU, but not Plaintiff. Defendants have applied the Student Organization Funding policy, procedures, practices, and customs to Plaintiff in a discriminatory manner, allowing other student organizations to receive

funding to speak on the same or similar topics that Defendants do not permit Plaintiff to receive funding to speak on.

145.    Accordingly, Defendants' Student Organization Funding policy and their enforcement of that policy against Plaintiff, violates Plaintiff's right to freedom of speech guaranteed by the First Amendment.

146.    Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  It is entitled to an award of monetary damages and equitable relief.

147.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its First Amendment right to freedom of speech and an injunction against Defendants' policy and actions.  Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of Plaintiff's Fourteenth Amendment Right to Due Process of Law
### (42 U.S.C. § 1983)

148.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-123 of this Complaint.

149.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the right to due process of law and prohibits Defendants from promulgating and employing vague and overbroad standards that allow for viewpoint discrimination in Defendants' handling of Plaintiff's application for student organization funding support.

150.    The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

151.    The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

152.    Defendants' Student Organization Funding policy, procedures, practices, and customs contain no criteria to guide administrators and Student Organization Advisory Board members when deciding whether to allocate money to a student organization.

153.    Defendants' Student Organization Funding policy, procedures, practices, and customs are impermissibly vague and ambiguous and are thus incapable of providing meaningful guidance to Defendants.

154.    The lack of criteria, factors, or standards in Defendants' Student Organization Funding policy, procedures, practices, and customs renders these policies and practices unconstitutionally vague and in violation of Plaintiff's right to due process of law under the Fourteenth Amendment

155.    Defendants applied the Student Organization Funding policy, procedures, practices, and customs to Plaintiff in *ad hoc*, discriminatory ways based on the content and viewpoint of its speech, in violation of its right of due process of law under the Fourteenth Amendment.

156.    Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  It is entitled to an award of monetary damages and equitable relief.

157.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to due process of law and an injunction against Defendants' policy and actions.  Additionally, Plaintiff is entitled to damages in an

amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

### THIRD CAUSE OF ACTION

### <u>Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law (42 U.S.C. § 1983)</u>

158.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-123 of this Complaint.

159.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the equal protection of the laws, which prohibits Defendants from treating Plaintiff differently than similarly situated student organizations.

160.    Defendants granted Student Organization Funding to other similar student organizations, but denied the same to Plaintiff.

161.    Defendants granted Student Organization Funding to the Black Student Alliance Council to rent the same campus theater that TAC sought funding to rent for the Star Parker event.

162.    Defendants granted Student Organization Funding to the NAACP, TAMU V-Day, and the Black Student Alliance Council for political and social events, but denied the same funding to TAC for its Star Parker event on political and social issues.

163.    Defendants treated Plaintiff disparately when compared to similarly situated student organizations by denying Plaintiff student organization funding.

164.    Defendants' Student Organization Funding policy and practices violate various fundamental rights of Plaintiff, such as its freedom of speech and due process of law.

165.    When government regulations, like Defendants' Student Organization Funding policy and practices challenged herein, infringe on fundamental rights, discriminatory intent is presumed.

166.    Defendants' Student Organization Funding policy and practices have also been applied to discriminate intentionally against Plaintiff's rights to freedom of speech and due process of law.

167.    Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiff.

168.    Defendants' Student Organization Funding policy and practices are not narrowly tailored as applied to Plaintiff because Plaintiff's speech does not implicate any of the interests Defendants' might have.

169.    Defendants have applied the Student Organization Funding policy, procedures, practices, and customs to Plaintiff in a discriminatory and unequal manner, allowing other student organizations to receive funding to speak on topics that Defendants say Plaintiff cannot receive funding to speak on, in violation of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment.

170.    Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.   It is entitled to an award of monetary damages and equitable relief.

171.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to equal protection of law and an injunction against Defendants' policy and actions.   Additionally, Plaintiff is entitled to damages in an

amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to Free Exercise of Religion
### (42 U.S.C. § 1983)

172.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-123 of this Complaint.

173.    The First Amendment's Free Exercise Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, guarantees Plaintiff and its members free exercise of religion.

174.    Laws that burden the free exercise of religion must be neutral and generally applicable.

175.    If they are not neutral and generally applicable, then they must be justified by a compelling state interest.

176.    Plaintiff's expression is motivated by the sincerely held religious beliefs of its members.

177.    Defendants' policy and practice of not funding religious issues and groups with Student Organization Funding is not neutral or generally applicable.

178.    Some religious student organizations, like the Muslim Student Association, received Student Organization Funding for events that were motivated by their religious beliefs.

179.    Other religious student organizations, like Plaintiff and Brothers Under Christ, did not receive Student Organization Funding for events that were motivated by their religious beliefs.

180.     Defendants' policy and practice of not funding Plaintiff's Star Parker event, which included religious issues being discussed, is not neutral or generally applicable.

181.     Defendants' policy and practice of excluding Plaintiff from Student Organization Funding substantially burdens Plaintiff's free exercise of religion without compelling or rational justification in violation of the First Amendment.

182.     Defendants' Student Organization Funding policy and their enforcement of that policy against Plaintiff, violates Plaintiff's right to free exercise of religion guaranteed by the First Amendment.

183.     Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  It is entitled to an award of monetary damages and equitable relief.

184.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its First Amendment right to free exercise of religion and an injunction against Defendants' policy and actions.  Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

### FIFTH CAUSE OF ACTION

**<u>Violation of the First Amendment's Establishment Clause</u>**
**<u>(42 U.S.C. § 1983)</u>**

185.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-123 of this Complaint.

186.     The First Amendment's Establishment Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, guarantees Plaintiff

and its members freedom from government hostility toward religion, inhibition of religion, and entanglement with religion.

187.    Government laws must have a secular purpose, neither advance nor inhibit religion, and may not entangle the government with religion.

188.    Without access to Student Organization Funding, religious students cannot hold events and activities that they would otherwise be able to hold with funding.

189.    Defendants' policy and practice of not funding religious issues and groups with Student Organization Funding inhibits religion.

190.    Defendants' Student Organization Funding policy requires that the government scrutinize private expression and determine whether private expression or a private purpose is "religious," thus impermissibly entangling the government with religion.

191.    Defendants' policy and practice of not funding religious issues and groups with Student Organization Funding entangles the government with religion.

192.    Defendants' policy and practice of not funding religious issues and groups with Student Organization Funding demonstrates hostility toward religion.

193.    Defendants have no compelling interest that would justify their hostility toward religion.

194.    Defendants' Student Organization Funding policy and their enforcement of that policy against Plaintiff, violates Plaintiff's rights under the Establishment Clause of the First Amendment.

195.    Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  It is entitled to an award of monetary damages and equitable relief.

196.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated the Establishment Clause of the First Amendment and an injunction against Defendants' policy and actions.  Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and provide Plaintiff with the following relief:

(A)    A declaratory judgment that the Defendants' Student Organization Funding policy violates Plaintiff's rights under the First Amendment;

(B)    A declaratory judgment that the Defendants' Student Organization Funding policy violates Plaintiff's rights under the Fourteenth Amendment;

(C)    A declaratory judgment that the Defendants' denial of Student Organization Funding to Plaintiff violated Plaintiff's rights under the First and Fourteenth Amendments;

(D)    A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf from enforcing the Student Organization Funding policy;

(E)    Actual damages in the amount of $2,500.00 for infringing Plaintiff's exercise of its First and Fourteenth Amendment rights;

(F)    Nominal damages for the violation of Plaintiff's First and Fourteenth Amendment rights;

(G)     Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in

this action pursuant to 42 U.S.C. § 1988; and

(H)     All other further relief to which Plaintiff may be entitled.

Respectfully submitted this 19th day of June, 2012,

By: /s/Kevin H. Theriot

DAVID A. CORTMAN*                      KEVIN H. THERIOT
Georgia Bar No. 188810                 Kansas Bar No. 21565
TRAVIS C. BARHAM*                      Texas Bar No. 00788908
Arizona Bar No. 024867                 Southern District of Texas Bar No. 1476065
ALLIANCE DEFENSE FUND                  ALLIANCE DEFENSE FUND
1000 Hurricane Shoals Road NE          15192 Rosewood
Suite D-1100                           Leawood, Kansas 66224
Lawrenceville, Georgia 30043           (913) 685-8000
(770) 339-0774                         (913) 685-8001—facsimile
(770) 339-6744—facsimile               ktheriot@telladf.org
dcortman@telladf.org                   *Attorney in Charge*
tbarham@telladf.org

                                       G. SCOTT FIDDLER
DAVID J. HACKER*                       Texas Bar No. 06957750
California Bar No. 249272              LAW OFFICE OF G. SCOTT FIDDLER, P.C.
Illinois Bar No. 6283022               9601 Jones Road, Suite 250
ALLIANCE DEFENSE FUND                  Houston, Texas 77065
101 Parkshore Drive, Suite 100         (281) 897-0070
Folsom, California 95630               (281) 897-0078—facsimile
(916) 932-2850                         scott@fiddlerlaw.com
(916) 932-2851—facsimile               *Local Counsel*
dhacker@telladf.org

                                       *Application for *pro hac vice* admission
                                       concurrently filed.

ATTORNEYS FOR PLAINTIFF

## DECLARATION UNDER PENALTY OF PERJURY

I, MARC PITTS, a citizen of the United States and a resident of the State of Texas, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 15th day of June, 2012, at College Station, Texas.

_Marc Pitts_

MARC PITTS, CHAIRMAN
TEXAS AGGIE CONSERVATIVES

32